CHARLES M. LEIGHTON, APPELLEE, v. HENRY T. CLARKE, APPELLANT.

FILED NOVEMBER 7, 1894.    No. 5220.

1. **Review:** CONFLICTING EVIDENCE. The finding of a lower court, based upon conflicting testimony, will not be disturbed by this court unless clearly and manifestly wrong.

2. **Partnership:** AGREEMENT OF, DISSOLUTION. Where parties engaged in a copartnership business enter into and make written agreement or agreements governing the dissolution of such copartnership, *held*, that so far as practicable and reasonable, the court, in settling the business and adjusting the relations between such parties, will be governed by the directions of the articles of agreement of dissolution, to the extent that they are applicable to such adjustment and settlement.

3. ————. The evidence in relation to the accounting between the parties examined, and *held* sufficient to sustain the finding of the lower court.

APPEAL from the district court of Lancaster county. Heard below before FIELD, J.

*Pound & Burr*, for appellant.

*Marquett, Deweese & Hall*, contra.

HARRISON, J.

Charles M. Leighton, the appellee, commenced this action in the district court of Lancaster county, the object of the

suit, as declared in the petition filed, being an accounting of the affairs of a copartnership which had previously existed between him and Henry T. Clarke, appellant. The articles of agreement pursuant to which the partnership was formed and existed were as follows:

"This agreement, made and entered into by and between Henry T. Clarke, of Omaha, Nebraska, and Charles M. Leighton, of Lincoln, Nebraska, witnesseth: That the said parties have and do hereby agree to enter into partnership for the purpose of engaging in the drug, paint, and oil trade in the cities of Omaha and Lincoln, Nebraska, under the following stipulations and agreements, to-wit:

"First—The name and style of the said firm in Omaha shall be Leighton and Clarke, and in Lincoln, Leighton and company.

"Second—That during the first year of said copartnership, commencing on the 6th day of September, 1883, each of said parties shall contribute to said business the sum of fifty thousand (50,000) dollars, and each shall share equally in the profits of said business.

"Third—The said Leighton shall devote all his time and his best skill and energy to said business and shall have the management and conduct of the same, with and under the advice of said Clarke; and for his said services he shall receive a salary at the rate of twenty-five hundred (2,500) dollars per annum, and in addition thereto his necessary and reasonable expenses when travelling on the business of said firm.

"Fourth—There shall be kept, at all times during the existence of said partnership, just and true books of account, which shall be at all times open to the inspection and examination of both of said parties, who shall for that purpose have free access thereto at any and all times.

"Fifth—The said parties also agree that once in each year, or oftener if required, upon the request of either of said partners, a true, just, and perfect account shall be made

and rendered of all profits or losses made or sustained in the course of the business of the firm, and also of all payments, receipts, and disbursements, made or received, connected with said business, and the said account being so made, the shares of profits to which each may be entitled shall be then divided and paid.

"Sixth—It is also agreed that upon any excess of capital which either of said parties may contribute to the business of said firm, over and above that contributed by the other party, interest shall be allowed upon such excess in favor of the party so contributing the same, at the rate of nine per cent per annum."

The copartnership engaged in the business named in the agreement in the cities indicated, and continued in the city of Omaha until December 1, 1884, when the partnership business there was discontinued, and the copartnership dissolved, the following being the contract of dissolution entered into regarding the Omaha portion of the business:

"This memorandum of agreement, made this 19th day of December, 1884, by and between C. M. Leighton and Henry T. Clarke, constituting the firm of Leighton & Clarke, and doing business in the city of Omaha, Douglas county, Nebraska, witnesseth: That said Leighton has sold and hereby conveys unto said Clarke all his interest in and to all drugs and goods of every nature and description whatever of the said firm of Leighton & Clarke, in the said city of Omaha, and the said Leighton hereby relinquishes unto said Clarke all his interest in and to the business of said firm in said city and hereby withdraws from said firm. The business of said firm of Leighton in said city of Omaha shall be settled between the parties hereto, upon the following basis, viz.: 1. The said Clarke shall have all the goods and stock of said firm in said city of Omaha, the value thereof to be calculated and computed at the cost price of the same, adding freightage thereto, and the cost price aforesaid shall be reckoned according to the

inventory of said goods and stock made December 1, 1884; that is to say, the said Clarke shall account to said Leighton on final computation for the said goods and stock, reckoning the value of the same upon the basis of said inventory, adding cost of freightage thereto; provided that in case any errors may hereafter be discovered in said inventory, then the same shall be corrected in that regard so as to be in accordance with the true amount of goods and stock on hand at the date aforesaid. 2. The said Clarke is to collect all debts due to said firm. 3. The said Clarke is to pay all the indebtedness of said firm now outstanding against the same as shown by the books of said firm. 4. All matters relating to insurance of any stock heretofore owned by said firm in said city of Omaha are to remain undivided and precisely the same as if this agreement had not been made. 5. The said Clarke shall proceed as speedily as may be convenient and advisable to settle and wind up the business of said firm in the city of Omaha, and after the said business shall have been cleared up, a computation shall be made by the parties hereto of the amount received by said Clarke, including the value of the goods mentioned in paragraph 1 above, and also of the amount paid out by him, including the capital stock paid in, and therefrom a payment shall be made by one to the other, sufficient to make equal the amount paid and received by each of the parties hereto."

In the city of Lincoln the partnership and business was continued until March 4, 1885, when the following agreement of dissolution and settlement with reference to it was entered into, to-wit:

"This memorandum of an agreement made and entered into this 4th day of March, 1885, by and between Charles M. Leighton, of Lincoln, Nebraska, and Henry T. Clarke, of Omaha, Nebraska, witnesseth:

"1. That the partnership relation heretofore existing between the parties above named, under the firm name of

Leighton & Co., of said city of Lincoln, is this day dissolved by mutual consent.

"2. That the said Clarke is to be and remain the sole owner of the business and good-will of said firm, with authority to continue said business should he so desire.

"3. That the said Clarke is to have all of the store fixtures and also all of the goods of said firm, both now on hand and in transit.

"4. That the said Clarke is to assume and pay off all of the indebtedness of said firm as shown by the books of said firm.

"5. That said Leighton is to have and collect all indebtedness due or owing to said firm of every nature and description whatever as shown by the books of said firm.

"6. That an invoice shall be taken of the store fixtures and goods of said firm, immediately upon the signing of this agreement.

"7. That the final settlement between the parties hereto, of the matters growing out of said firm's business, shall be made as follows: (1.) The said Clarke shall be charged with the goods of said firm received by him, including store fixtures, the same to be calculated at their actual value, less two per cent for discount, to which value freight shall be added.   (2.) The said Leighton shall be charged with the par or face value of all indebtedness due to said firm and turned over to him, as stated in the fifth paragraph of this agreement, but from said par or face value two per cent shall be deducted for discount; and he shall also be charged with one-half of the amount of unpaid insurance now in litigation, deducting the one-half of the profits made by the firm of Leighton & Clarke in said city of Omaha.   (3.) The said Clarke is to be credited with all sums paid or agreed to be paid by him upon the indebtedness of said firm, as stated in the fourth paragraph of this agreement.   (4.) That as soon as the invoice mentioned in the sixth paragraph of this agreement is completed, a bal-

ance shall be struck between the parties hereto of all matters growing out of said firm's business, and whatever balance shall be found to be due from either of said parties to the other shall be paid as follows: If the balance shall be due from the said Leighton he shall turn over to the said Clarke a sufficient amount of the accounts received by said Leighton from said firm's business to pay off such balance, the said accounts to be selected by said Clarke from those turned over to said Leighton. But if the balance shall be found to be due from the said Clarke, that such balance shall be paid from the said Clarke in goods, and, in case said Leighton shall desire them, such goods to be selected by said Leighton for a general stock for retail drug business, reckoning the prices of such goods the same as in the invoice hereafter to be made, as previously stated in their contract; in case, however, said Clarke should prefer to do so, he may pay such balance to said Leighton in money within sixty days after the completion of said invoice.

"8. That all matters growing out of any insurance in Omaha shall remain undivided and unsettled between the parties hereto precisely as if this agreement had not been made.

"9. That in case any difference should hereafter arise between the parties hereto in relation to the settlement and balancing up of the business mentioned in this agreement, then each of the parties hereto shall select an arbitrator, and the two then chosen shall select a third, and the three so chosen shall arbitrate and adjust the matter in difference between said parties and fix and determine the amount to be paid from one to the other of said parties under this agreement, and such determination shall be final and conclusive."

The answer of appellant admitted the copartnership and the ensuing business relations between the parties and dissolution and agreements therefor as pleaded in the petition. The appellant further states in his answer that in the month

of August, 1884, the firm suffered a loss by fire which destroyed a large portion of the stock of goods in its store at Omaha, and that at the time of the fire the stock was insured in the sum of $84,500, and Leighton, appellee herein, who was in charge of the business, in the process of adjustment by the insurance companies of the loss, in an attempt to defraud said insurance companies, made, or caused to be made, a false inventory of the goods which were undamaged by the fire, by which it appeared that the loss was greater than it really was; that this was done without the consent or knowledge of Clarke. The amount of loss as figured in the first instance was $54,351.60, which, after some controversy between the companies and the firm, was reduced to $39,401.45, which was agreed to be the amount of the loss. A number of the insurance companies, probably half of them, paid the sums due from them respectively, amounting in the aggregate to $19,854.91; that the insurance companies gained information which excited their suspicions in regard to the accuracy of the inventory upon which the adjustment had been based, and those companies which had made payment instituted suits for the return of the sums so paid, and the others refused payment, thus forcing Clarke to sue them; that the action of the companies was predicated upon the clause contained in each of the policies providing in substance that if any fraud is practiced by the assured, or misrepresentation made, a forfeiture of all rights under the terms of the policy ensues. The result of the actions was adverse to the firm; the companies which had paid recovering a portion of the amounts paid, and the ones against whom actions were commenced by the firm succeeding in reducing the amounts claimed, the aggregate amounts as fixed by the juries being $25,902.30, which, it is alleged, is much less than the loss suffered, and the difference between this sum and what he alleges was actually lost the appellant claims should be allowed him against Leighton

32

as damages. There are further allegations in the answer
setting forth the failure of the appellee to contribute his
full share of the stock of the firm as contemplated by the
articles of copartnership, his paying interest from funds
belonging to the firm on his individual note due a bank,
and some other matters in which it is charged he designed
to defraud or cheat his partner. The answer concluded with
a prayer for accounting along the lines stated in the an-
swer or bearing in mind the affirmative matters alleged
therein. The reply gives the appellee's version of the fire
and the actions of the different parties in reference to the
adjustment of the loss and other matters connected there-
with; denies any intent on the part of appellee to defraud
the insurance companies or in any manner to misrepresent
the value of the goods not destroyed, or to falsely swell or
increase the amount of the loss; relates the history of
the payment by some of the companies and their suits for
and recovery of a portion of such payments, the actions
against the others by the firm, and agrees in the amounts
recovered, and, in the main, with the allegations in regard
to the same facts in the answer, but denies all charges of
fraud or deceit in all other matters as strenuously as those
referring to the loss by fire and its adjustment, and further
states that Clarke had as full and free access to the busi-
ness of the firm in all its particulars, after the fire, as the
appellee, and was as fully cognizant of all the actions of
the parties in the insurance matters referring to the loss and
its adjustment as had or was the appellee. There are some
further allegations in the reply denying the appellant's
statements in his answer wherein the appellee's conduct and
good faith are called in question regarding his contribu-
tions to the stock by executing his individual note for
$10,000 and delivering it to the firm and crediting himself
with a like sum of stock, and the reference in the answer
to a $5,000 note and his payment of the interest to the
bank with money belonging to the firm, which need not

here be more specifically noted. The reply closes with a general denial of each and every allegation not specifically admitted. There was a trial to the court which resulted in the following findings and judgment, viz.:

"This cause having been heretofore on a day of a former term of this court, to-wit, April 16, 1890, tried and submitted to the court, now comes on for final determination, and after due consideration, and being fully advised in the premises, the court finds that there is nothing due the plaintiff upon the cause of action set forth in the petition herein from the defendant. The court further finds that the evidence fails to establish the charge of fraud against the plaintiff made in the defendant's answer and cross-petition against the plaintiff concerning the loss by fire in Omaha, and the court further finds that there is nothing due the defendant from the plaintiff upon the cause of action set forth in the answer and cross-petition of the said defendant. Finds that the costs should be apportioned between the parties as follows: Each party to pay his own witness fees, and all other costs to be equally divided between the parties to this action. It is therefore considered and adjudged by the court that the plaintiff take nothing upon the cause of action set forth in his petition, and that as to such cause of action the defendant go hence without day; and that the defendant take nothing upon the cause of action set forth in his answer and cross-petition, and that as to said cause of action the plaintiff go hence without day, and that the plaintiff and defendant each pay their own witness fees, and also that each party hereto, plaintiff and defendant, pay one-half the costs of this action; the costs of the plaintiff, including witness fees, being taxed at $47.74, and the defendant's costs, including witness fees, being taxed at $59.74, and for all of which execution is hereby awarded. To all of which findings and decree each of the parties hereto duly and severally except and pray an appeal, which is by the court allowed, and forty days from the rising of

the court are hereby given them to reduce their exceptions to writing."

The case was brought to this court by an appeal on the part of Henry T. Clarke.

We will first dispose of the question of the fraud and deceit of plaintiff alleged in the answer. The court below finds that "the evidence fails to establish the charge of fraud against the plaintiff, made in the defendant's answer," and after a careful examination of all the testimony bearing upon this particular point we cannot say that this finding is manifestly or clearly wrong; this being true, in accordance with the established rule of this court, we will not disturb it. This eliminates from our further consideration of the case all questions arising from and connected with the main one of the fraud and deceit of plaintiff as a foundation for a claim of damages in favor of appellant against appellee, and our task is narrowed to an accounting between the parties, in which we have furnished us by them the articles of copartnership and the two contracts of dissolution for our direction and government, and with the provisions of which, in so far as we are able to understand, construe, and apply them, we will attempt to comply, for certainly wherein the parties themselves have mapped out the course of settlement, if reasonable and practicable, it should be observed and followed. We have in evidence in the case some statements of the accounts between the parties referring to the business as conducted in Omaha, and also in Lincoln, and considerable testimony of the same nature in regard to certain items of account which were not included in any of the statements or lists furnished by the book-keeper or experts who examined the books. Taking our figures then from the testimony, not from any particular lists or portions of the testimony, but using such as seemed from a consideration of all the evidence the true figures as to particular items in the account, and accepting and being guided in our estimates by the

articles of dissolution as viewed or construed in connection with the agreement of copartnership and comparison of the figures, a balancing of the accounts brings us to the same conclusion as that reached by the trial court,—that neither appellee nor appellant has proven anything due him from the other, and that the judgment in accordance with such finding is correct, hence it is

AFFIRMED.