KIRBY BAILEY, APPELLEE AND CROSS-APPELLANT, v. LEON McCOY, APPELLANT AND CROSS-APPELLEE.

193 N. W. 2d 270

Filed December 30, 1971. No. 38000.

Kirby & Spittler, for appellant.

Thomas E. Brogan, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SMITH, J.

Kirby Bailey sued Leon McCoy to wind up the affairs of a partnership formed to render accounting and income tax services. After a trial the district court rendered judgment of $3,062.42 in favor of Bailey. McCoy appeals and Bailey cross-appeals.

In the year 1966 Bailey, an Internal Revenue Service examining agent, was living at Norfolk. McCoy was conducting a combined income tax, accounting, insurance, and real estate business at Neligh. They entered into a written agreement of partnership in October 1966, to render income tax and accounting services at Neligh from January 1, 1967. Bailey and his family moved to Neligh.

Bailey and McCoy in the agreement adopted many provisions that a lawyer had drafted in an unrelated transaction between McCoy and a third party. The partnership would remain in existence until dissolution by mutual agreement or court action. McCoy sold Bailey one-half of McCoy's "interest" for $1. The partnership would pay $50 a month for rental of office space and equipment, and for utilities. The premises and all present office equipment would remain the property of McCoy.

Material ambiguities began in paragraph VII of the agreement: ". . . the value of the partnership is considered to be equal to the annual income therefrom."

Paragraph VIII of the agreement set out a procedure for sale of the undivided interest of either partner to the other. Sixty days' notification of the outgoing partner's desire to "terminate" the partnership was required. Should the parties not agree upon the price, appraisers

would set it. Prior to January 1, 1969, however, upon withdrawal of Bailey, the price payable by McCoy at his option would be $1. Should McCoy "not elect option to purchase other one-half, that in event of dissolution, that he will have the option to divide the customers equally between the two partners. This will in no way guarantee that either or both partners will retain all of the customers he acquires. It is agreed however, that neither will solicit those customers acquired by the other partner."

Succeeding paragraphs formed background of the present controversy. Under paragraph IX refusal of either party to pay the appraisal price conferred upon either one the right to a judicial dissolution of the partnership. Under paragraph X the partner departing or "forcing"' dissolution agreed not to solicit income tax or accounting business in Antelope County, in which Neligh, but not Norfolk, was located. The paragraph would be inoperative, should the parties divide the business.

In December 1967, Bailey and McCoy negotiated with Wayne E. Boone to form a three-man partnership. They orally agreed Boone would receive one-third of the net profits from January 1, 1968, but no interest in the business until January 1, 1970. The parties performed into the year 1969.

On May 5, 1969, Bailey submitted to McCoy and Boone a financial statement of that date. In the statement, Bailey admitted having overdrawn his account $1,647.50 in 1967 and $1,719.90 from January 1, 1968, to May 5, 1969. The federal partnership income tax return for 1968 set out an overdraft of Bailey in the sum of $2,605.24. In addition to those amounts Bailey admitted owing McCoy $584.84 on an unrelated insurance account. The parties agreed upon the last item and the amount of the 1967 overdraft.

On May 14, 1969, Bailey notified McCoy of Bailey's intention to retire July 15, the notification referring to

the 1966 agreement. Afterward McCoy retained all bank records and files of clients except a corporation and its majority stockholder. The corporation probably was employing Bailey at the time of trial in September 1969. McCoy and Boone were continuing all other business. No creditor's rights intruded.

The district court found generally for Bailey on his petition and for each party on right to an accounting. In rendering judgment, the court did not disclose how it computed the amount. Neither party requested special findings, and no one may rightly complain. Special findings ordinarily are unnecessary unless a party requests them with a view of excepting to the decision of the court upon the question of law involved in the trial. See § 25-1127, R. R. S. 1943.

McCoy argues that (1) the Bailey-McCoy partnership terminated December 31, 1967, and Bailey is indebted to McCoy on an account stated in the sum of $1,647.50, the amount of the overdraft in 1967; (2) settlement of those accounts barred Bailey's right to recover under paragraph VII of the written agreement; (3) the court erroneously debited Bailey's account in the sum of $584.84 on the insurance account which was unrelated to the partnership; and (4) McCoy was entitled to recover Bailey's overdraft of $2,605.24 set out in the partnership tax return for 1968.

Bailey on cross-appeal contends that (1) only one partnership existed; and (2) the word "income" in paragraph VII of the 1966 agreement meant gross income. He urges a right to recover $10,459.19, based on the year 1968, or $14,236.16 which equaled one-half of the gross income for the fractional year January 1 to May 5, 1969.

Agreement on the amount of the overdraft in 1967 did not rise to the dignity of a settlement that barred Bailey's right under paragraph VII of the 1966 agreement. The debit of $584.84 on the insurance account was indisputedly accurate. McCoy therefore complains of an unrelated debit without evidence of prejudice to him. He

is also entitled to debit Bailey's account only in the sum of $1,719.90 which apparently equaled the 1968 overdraft less a balance in favor of Bailey for 1969.

Two other problems stand out. One is whether Boone was an indispensable party. No one raised the question in district court. The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in. § 25-323, R. R. S. 1943.

Boone was not an indispensable party, whether the number of partnerships was one or two. Prior to January 1, 1970, he possessed no interest in good will. He incurred no obligation and he possessed no right to contribute to the purchase of good will from a retiring partner. Lack of public notification of dissolution was not material here. We decide that a partnership may continue, although it admits a partner or a partner retires.

"Retirement is an obvious cause of dissolution not specified, although it may fall within one of the specific causes. Admission of a new partner is not specified as a cause although it is often said to be. The better view is that it is not.

". . . no dissolution occurs in a large partnership whose articles specify that there is no dissolution on death, retirement, incapacity, etc. Examples include accounting . . . firms with dozens or hundreds of partners, and frequent changes in membership. There is no reason why legal theory should not accept this practical result, and it has done so. And there is no reason to limit it to larger firms.

"The older view of inevitable dissolution depended on delectus personae and the non-transferability of interests in partnership. But both these roots are matters of partnership agreement and can be varied by agreement." Crane and Bromberg on Partnership, § 73, p. 417, n. 3,

and p. 418 (1968). See, also, Bromberg, "Partnership Dissolution - Causes, Consequences, and Cures," 43 Tex. L. Rev. 631 (1965).

The agreement in many respects is the law of the partnership. See, § 67-343, R. R. S. 1943; Uniform Partnership Act (U.L.A.), § 43 (1969); Crane and Bromberg on Partnership, § 5(b), p. 43 (1968); 1 Rowley on Partnerships, § 8.1, p. 196 (2d Ed., 1960); cf. Leighton v. Clarke, 42 Neb. 427, 60 N. W. 875 (1894). "It is time we recognize in this respect (changes of membership) . . . that the partnership is what the partners make it." Crane and Bromberg on Partnership, § 78A, p. 444 (1968).

The second problem is interpretation of the word "income" in paragraph VII of the Bailey-McCoy agreement. A partnership engaged in performing services may possess good will. Crane and Bromberg on Partnership, § 84(a), p. 480 (1968). Good will may or may not be of value when the business has been conducted at a loss. 1 Rowley, § 8.1, p. 196; 2 Rowley, § 47.0, p. 137. In a service partnership agreement with a provision that the partners base payment for good will on annual income, the word "income" ordinarily imports net profits.

Evidence concerning transactions unassailed on appeal is not clear. The positions of the parties and the record lead us to these findings and conclusions. The base year for calculation of the value of good will is 1968, not fractional 1969. The proportion is one-half, not one-third. Bailey's account ought to be credited and debited as follows:

| Credit: Good will | | $7,942.14 |
|---|---|---|
| Debits: | | |
| Overdraft in 1967 | $1,647.50 | |
| Overdraft in 1968 less balance in 1969 | 1,719.90 | |
| Insurance account | 584.84 | 3,952.24 |
| Balance | | $3,989.90 |

We accordingly modify the judgment by increasing the amount to $3,989.90. So modified, the judgment is affirmed.

AFFIRMED AS MODIFIED.