STATE of Minnesota, Respondent,

v.

Scot Perry CHRISTIAN, Appellant.

No. CX–01–1459.

Supreme Court of Minnesota.

Feb. 13, 2003.

Rehearing Denied March 11, 2003.

Mike Hatch, Minnesota Attorney General, Thomas R. Ragatz, Assistant Attorney General, St. Paul, MN; and Patrick A. Oman, Mower County Attorney, Austin, MN, for State of Minnesota.

Mark D. Nyvold, St. Paul, MN, for Scot Perry Christian.

OPINION

HANSON, Justice.

Appellant Scot Perry Christian was convicted of two counts of first-degree premeditated murder, two counts of first-degree felony murder, two counts of second-degree intentional murder, two counts of second-degree felony murder, one count of first-degree assault and one count of felon in possession of a pistol, stemming from a robbery carried out by appellant and several others. During the fourth day of jury voir dire, he asked to be allowed to represent himself. This request was initially granted, but the district court reconsidered its decision a day later. Based on the finding that appellant had made the request with the intent to delay trial, the district court denied it. Appellant seeks a new trial, arguing that the district court erred in terminating his self-representation and in joining his trial with that of two other defendants. He further argues that he was the victim of prosecutorial misconduct and ineffective assistance of counsel. We affirm.

Appellant, his brother David Christian, Vernon Powers and Janea Weinand planned and carried out an armed robbery at the Downtown Motel in Austin, Minnesota, on June 30, 2000. After Weinand knocked on the victims' motel room door, appellant and Powers entered the room with guns, demanded money and ultimately fired their weapons. Of the five occupants of the room, two died from gunshot wounds; a third was hit but survived.

Weinand entered into a plea agreement with prosecutors. Over objection, the district court joined the trials of appellant, Powers and David Christian. While awaiting trial, appellant and Powers escaped from the Mower County Jail but were apprehended. Because of adverse local publicity surrounding the escape, venue was transferred to Dakota County. Jury selection for the joined trial of appellant, Powers and David Christian began on Monday, May 14.

On Friday, May 18, the fourth day of jury selection, appellant complained that his attorneys were not representing him adequately. "I truly believe if I have to I could do it myself," appellant told the court. Appellant requested a continuance so that he could seek private counsel. The district court stated, "I will also point out to you that you do have the option of representing yourself, since you apparently brought that to the Court's attention" and then granted appellant a continuance until the following Monday, May 21. Counsel for codefendant David Christian moved to sever appellant's trial if appellant was allowed to represent himself because of the potential for prejudice to David Christian. The court deferred ruling on that motion.

On Monday, May 21, appellant asked for another continuance to obtain private counsel. In the alternative, he moved that he be allowed to represent himself. The court denied the continuance and then addressed appellant's self-representation motion. The court told appellant:

I want you to be aware of two things; one of which is that any defendant has an absolute right to proceed pro se, so long as in the Court's determination they enter an intelligent waiver of their right to counsel. An intelligent waiver does not mean saying ["]I want to represent myself,["] it means that you have to demonstrate that you truly understand the ramifications of proceeding on your own, and that you also understand that given the status of this matter and the late date for the request that while your attorneys would be discharged, they would be reappointed as standby counsel. And, pursuant to the Rules of

Criminal Procedure, in the event that this Court made a determination that the request to go pro se is a potential delay or disruption in this trial, if at any point your representation of yourself constituted a disruption of this trial or [if it] became obvious to the Court that it was solely for the purpose of delay or, in this particular instance, solely for the purpose of obtaining a severance by the device of representing yourself, the Court has the option of simply reappointing your attorneys and prohibiting you from representing yourself pro se.

Appellant said that he understood this. Appellant then answered several questions the court put to him regarding the scope of his right to self-representation and the relevant laws appellant would need to be familiar with while conducting his own defense. After the prosecution agreed that "the Court made the correct inquiries of [appellant] to determine whether he was making a knowing, voluntary [and] intelligent waiver of his right to counsel," the district court granted appellant's motion to represent himself.

David Christian immediately moved for severance, arguing that appellant's "lack of legal knowledge and training" would have a "spill-over effect" which would prejudice David Christian. The court denied that motion. Appellant then filed five motions, among them a severance motion made on the same grounds as David Christian's. In response to this severance motion, the court asked appellant whether his request to represent himself had anything to do with his desire to be tried separately. Appellant answered "[y]es and no" and reiterated the concerns earlier expressed by David Christian. The court essentially denied appellant's motions but granted a continuance until the following afternoon, asking counsel to research the severance question further.

When trial resumed on Tuesday, May 22, all three codefendants requested that their trials be severed because of the risk of prejudice. After appellant spoke on his own behalf, the court informed him that, were the trials to be severed, he would be the first defendant tried that afternoon. When appellant said he was ready to proceed "[i]f I have to," the court asked him if he would be ready to question jurors, make an opening statement and defend himself. Appellant stated that he was not ready to do those things.

The state then asked the court to reconsider appellant's self-representation motion. The court agreed. It found that the purpose of the motion had been "to allow a delay" and rescinded its order allowing appellant to represent himself. As support for this finding, the court cited appellant's prior "[y]es and no" statement regarding the relation between his self-representation motion and his severance motion, appellant's admission that he was not prepared to proceed with trial immediately, the fact that appellant did not make the self-representation motion until the fourth day of jury selection and the fact that the case had "already * * * once been continued due to the efforts of the defendants."[1] After a recess, the court added that appellant's motions for severance and for a continuance were further evidence of his dilatory intent. The court then denied all severance motions. Appellant never represented himself in the presence of the jury. The jury found appellant guilty of all charges.[2]

---

1. Both parties interpret this statement as a reference to appellant's escape from the Mower County Jail.

2. Powers was convicted of premeditated first-degree murder and other crimes, and his convictions were affirmed by this court. *State v. Powers*, 654 N.W.2d 667, 671–72 (Minn.2003).

Appellant asserts that the district court's ruling ending his self-representation denied him his Sixth Amendment right to represent himself. He also argues that his severance motion was improperly rejected and that he was denied a fair trial as a result of prosecutorial misconduct and ineffective assistance of counsel.

## I.

■ We first address appellant's claim that the district court erred in rescinding his order granting Christian's request to represent himself. In *State v. Richards*, we held that the deprivation of the right of self-representation is not subject to a harmless error analysis and overturned Richards' conviction because the district court's refusal to let Richards proceed pro se was "clearly erroneous." 456 N.W.2d 260, 263–64 (Minn.1990) (hereinafter *"Richards I"*). We therefore apply the clearly erroneous standard in reviewing the district court's denial of a self-representation motion.

■ Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant has the right to defend himself in a state criminal proceeding. *Faretta v. California*, 422 U.S. 806, 834, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). While that right is not explicitly mentioned in the Sixth Amendment,[3] the United States Supreme Court has ruled that the Sixth Amendment right to the assistance of counsel implies a correlative right of self-representation:

> Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

*Faretta*, 422 U.S. at 819–20, 95 S.Ct. 2525 (footnote omitted).

*Faretta* is the last expression on this subject by the United States Supreme Court. As was predicted in the dissent of Justice Blackmun, the lower courts have struggled with the procedural questions that were left unanswered by *Faretta*:

> Must every defendant be advised of his right to proceed *pro se?* If so, when must that notice be given? Since the right to assistance of counsel and the right to self-representation are mutually exclusive, how is the waiver of each right to be measured? If a defendant has elected to exercise his right to proceed *pro se*, does he still have a constitutional right to assistance of standby counsel? How soon in the criminal proceeding must a defendant decide between proceeding by counsel or *pro se?* Must he be allowed to switch in midtrial? May a violation of the right to self-representation ever be harmless error? Must the trial court treat the *pro se*

---

David Christian was convicted of second-degree unintentional felony murder and of first-degree assault, and his convictions were affirmed by the court of appeals. *State v. Christian*, No. C5–01–1840, 2002 WL 31415382, at *3, *9 (Minn.App. Oct.29, 2002), *rev. denied* (Minn. Dec. 30, 2002).

**3.** The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

defendant differently than it would professional counsel?

*Id.* at 852, 95 S.Ct. 2525 (Blackmun, J., dissenting). Of these questions, the one that is presented here—"How soon in the criminal proceeding must a defendant decide between proceeding by counsel or *pro se?* "—has not been definitively answered. While *Faretta* treats the right of self-representation as virtually absolute, subject only to the conditions necessary to a waiver of the right to assistance of counsel, the request for self-representation in *Faretta* was made well before the beginning of jury selection. Thus, *Faretta* did not address the issue of whether the strength of the right of self-representation is diminished by the passage of time.

We have said that a defendant's request for self-representation should be granted where it is "clear, unequivocal, and timely" and the defendant "knowingly and intelligently waives his right to counsel." *Richards I,* 456 N.W.2d at 263 (citing *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525). But, *Richards I,* like *Faretta,* involved a motion for self-representation that was made weeks before jury selection was to begin. Thus, *Richards I* likewise does not address the issue of whether the strength of the right of self-representation is diminished by the passage of time. The argument that it might or should be diminished is based on the conflict between the defendant's right of self-representation and the authority of the district court to control trial proceedings. *State v. Richards,* 552 N.W.2d 197, 205 (Minn.1996) (hereinafter *"Richards IV"*). We have held that the district court may rescind the pro se status of a defendant who " 'deliberately engages in serious and obstructionist misconduct' " and have stated that the court cannot allow a defendant to use the right of self-representation to delay proceedings or to force a mistrial. *Id.* (quoting *Faretta,* 422 U.S. at 834 n. 46, 95 S.Ct. 2525).

■ In the absence of a definitive statement by the U.S. Supreme Court on the appropriate resolution of this conflict, we look for guidance to the decisions of the federal courts of appeal and especially to those of the Eighth Circuit Court of Appeals. The Eighth Circuit has held that a defendant's right of self-representation is "unqualified" only if it is demanded before trial. *See, e.g., United States v. Wesley,* 798 F.2d 1155, 1155 (8th Cir.1986). After trial begins, the self-representation right "is subject to the trial court's discretion which requires a balancing of the defendant's legitimate interests in representing himself and the potential disruption and possible delay of proceedings already in progress." *Id.* at 1155–56 (citing *United States ex rel. Maldonado v. Denno,* 348 F.2d 12, 15 (2d Cir.1965)).

We are persuaded that this discretion to balance these conflicting interests is essential to the adequate protection of the right to assistance of counsel. We agree with the observation that the " 'right to counsel is, in a sense, the paramount right; if wrongly denied, the defendant is likely to be more seriously injured than if denied his right to proceed pro se.' " *United States v. Betancourt–Arretuche,* 933 F.2d 89, 92 (1st Cir.1991) (quoting *Tuitt v. Fair,* 822 F.2d 166, 177 (1st Cir.1987)).

### A. When Does "Trial" Begin?

If we are to follow the *Wesley* rule— that, after trial begins, the district court has discretion to balance the defendant's right of self-representation against the potential for disruption or delay—we must determine what activity constitutes the beginning of trial. *Wesley* did not address this precise question because the request in that case was made mid-trial, well after the beginning of trial under any definition.

*See* 798 F.2d at 1156.[4]

The Minnesota Court of Appeals and the courts of some other states have held that a self-representation motion is untimely " 'where the request is not made a reasonable time before trial and there is no good cause justifying [its] lateness.' " *State v. VanZee*, 547 N.W.2d 387, 391 (Minn.App. 1996) (quoting *Lyons v. State*, 106 Nev. 438, 796 P.2d 210, 214 (1990)); *People v. Windham*, 19 Cal.3d 121, 137 Cal.Rptr. 8, 560 P.2d 1187, 1191–92 (1977); *Russell v. State*, 270 Ind. 55, 383 N.E.2d 309 (1978); accord *Hamiel v. State*, 92 Wis.2d 656, 285 N.W.2d 639, 648 (1979).

In contrast, some federal circuit courts have held that a request is timely if made before "meaningful trial proceedings," defined to coincide with the attachment of jeopardy when the jury is sworn. *See, e.g., Betancourt–Arretuche*, 933 F.2d at 96; *Fritz v. Spalding*, 682 F.2d 782, 784 (9th Cir.1982); *Chapman v. United States*, 553 F.2d 886, 895 (5th Cir.1977); *see also Larrabee v. Bartlett*, 970 F.Supp. 102, 105 (N.D.N.Y.1997). But some of these courts have treated a motion as untimely, even if made before the jury is sworn, if it is made with dilatory intent. *See, e.g., Fritz*, 682 F.2d at 784 ("[A] motion to proceed pro se is timely if made before the jury is empaneled, unless it is shown to be a tactic to secure delay.").

Although this latter line of cases suggests that "meaningful trial proceedings" do not occur until the jury is sworn, none of these cases actually involved a motion for self-representation that was made after jury selection had begun. Thus, their focus on jury empanelment is made in the abstract and, in our view, is based on an incomplete analysis. In fact, we have only found a single case dealing with a self-representation motion that was made during jury voir dire and that case held that "meaningful trial proceedings" commenced with the beginning of jury selection. *See Robards v. Rees*, 789 F.2d 379, 382 (6th Cir.1986) (holding a self-representation request untimely where made after voir dire had begun, but before the jury had been empaneled). The court ruled the motion untimely and recognized the discretion of the district court to deny it, stating that defendant Robards' self-representation request, if granted,

> would have impermissibly delayed the commencement of the trial. The clerk had called the roll of jurors before Robards made his request for self-representation. Had the request been granted, the trial judge would have been obliged to postpone the commencement of the trial for an extended period of time in order to allow Robards a sufficient amount of time to prepare his defense. It was within the discretion of the trial judge to deny Robards' request. His denial was not an abuse of discretion. Moreover, this Court believes that this denial by the state court was not tantamount to a constitutional violation.

*Id.* at 384.[5]

We reached a similar conclusion in an analogous situation in *State v. Worthy*, 583

---

4. Similarly, the issue of when a motion for self-representation is "untimely," so as to activate the district court's discretion, has not been addressed by this court. In *Richards I*, we said that a self-representation motion may be denied if it is not timely filed, but the motion there was made weeks before jury selection. 456 N.W.2d at 263.

5. In other contexts, circuit courts have held that voir dire is "an integral component of trial," *United States v. Ford*, 824 F.2d 1430, 1438 (5th Cir.1987), and "a delicate process whose outcome can be critical to the eventual trial," *United States v. Dees*, 125 F.3d 261, 268 (5th Cir.1997). The United States Supreme Court has held that voir dire is "a critical stage of the criminal proceeding" and that

N.W.2d 270 (Minn.1998). In *Worthy*, two defendants expressed dissatisfaction with their court-appointed attorneys and moved for substitute counsel during jury voir dire. *Id.* at 274. We held that this motion was untimely, stating that it was made "on the morning of trial." *Id.* at 278–79.

■ We conclude that, for the purpose of applying the *Wesley* standard, trial begins at the commencement of jury voir dire. Thus, when a self-representation motion is made after jury voir dire begins, the district court must exercise its discretion to balance "the defendant's legitimate interests in representing himself and the potential disruption and possible delay of proceedings already in progress." *Wesley*, 798 F.2d at 1155–56.

### B. Did the District Court Abuse Its Discretion?

When it reconsidered its grant of appellant's self-representation motion, the district court found that appellant had made the motion in order to delay his trial. In support, the court cited five facts: (1) appellant's "[y]es and no" statement admitting to some connection between his self-representation request and his severance motions; (2) his statement that he was not ready to begin trial proceedings immediately; (3) the late date of appellant's motion; (4) appellant's escape from jail; and (5) the motions appellant had filed seeking severance and a continuance.

Appellant argues that the district court's finding of dilatory intent was a mere pretext; he claims that the district court reconsidered his self-representation motion in order to avoid dealing with the severance motions from all three defendants. We view the situation differently.

■ First, we conclude that when the district court initially granted appellant's motion, it applied the incorrect legal standard. It mistakenly assumed that appellant had "an absolute right to proceed pro se" and failed to recognize that the request was addressed to the court's discretion because it was made after the beginning of trial. Consequently, we do not regard the district court's initial order as establishing that appellant's motion was timely, or as narrowing the district court's discretion to that available after a timely motion is granted, which allows rescission only where the defendant engages in "serious and obstructionist misconduct." *Richards IV*, 552 N.W.2d at 205.

■ Second, when the district court later reconsidered its initial order, it applied the correct legal standard by exercising its discretion to balance appellant's right of self-representation against the potential for disruption and delay. Although the district court did not articulate the standard precisely as we do here, its approach reflected the essential elements of that standard and was not clearly erroneous. The court's finding, that appellant's motion had been made for the purpose of delay, was supported by the evidence and it supported the denial of appellant's self-representation motion.

Third, because the district court applied the correct legal standard when it reconsidered its initial order, and expressly based its decision on intent to delay, which was within its discretion under that standard, we decline to speculate about whether the court's decision was motivated by some other unexpressed rationale.

In summary, we choose to follow the rule in *Wesley* that self-representation mo-

"'trial commences at least from the time when the work of empanelling the jury begins.'" *Gomez v. United States*, 490 U.S. 858, 873, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) (quoting *Lewis v. United States*, 146 U.S. 370, 374, 13 S.Ct. 136, 36 L.Ed. 1011 (1892)).

tions made after the beginning of trial are addressed to the discretion of the district court to balance the defendant's right of self-representation against the potential for disruption and delay. We hold that trial begins, for this purpose, when the jury selection process begins. On the facts before us, we conclude that the district court's denial of the motion, based upon the finding of appellant's intent to delay, was not clearly erroneous. Therefore, we affirm the district court's denial of appellant's self-representation motion.

## II.

Appellant raises three further arguments: improper joinder, prosecutorial misconduct and ineffective assistance of counsel. None is convincing.

■ Appellant argues that he was prejudiced by having his trial joined with that of Vernon Powers. He relies on the fact that, in connection with a prior plea agreement, Powers made statements incriminating appellant. But Powers' plea agreement was rescinded, his guilty plea was vacated and the jury never heard his statements implicating appellant. Powers' trial testimony did not incriminate appellant. Therefore, Powers' statements could not have caused the "substantial prejudice" to appellant that would be necessary to require a new trial. *See State v. Hathaway,* 379 N.W.2d 498, 502 (Minn.1985).[6]

■ Appellant argues that he was denied a fair trial because of prosecutorial misconduct. He cites statements made by the prosecutors during voir dire and closing argument. Appellant also claims that the prosecutor engaged in an improper ex parte contact with a juror. Appellant has

not established that any conduct of the prosecutor rose to the level of "inexcusable, serious and prejudicial" misconduct that would be required for us to disturb the district court's discretion to govern attorney conduct during a trial. *See State v. Henderson,* 620 N.W.2d 688, 702–03 (Minn.2001).

■ Appellant argues that he was denied a fair trial because of ineffective assistance of counsel. We have held that an appeal from a judgment of conviction is generally not the proper method of raising an issue concerning the effectiveness of defense counsel because of the difficulty an appellate court has in determining the facts regarding the representation. *State v. Gustafson,* 610 N.W.2d 314, 321 (Minn. 2000). The preferred procedure is to raise the issue of ineffective assistance in a petition for postconviction relief in the district court. *Id.* The record does not provide a sufficient basis to review appellant's complaints, most of which require "additional facts to explain the attorney's decisions." *Black v. State,* 560 N.W.2d 83, 85 n. 1 (Minn.1997). Therefore, we decline to reach the merits of the issue. Appellant's right to pursue an ineffective assistance of counsel claim in a petition for postconviction relief is preserved.

Affirmed.

Dissenting, PAGE, J. and BLATZ, C.J., and PAUL H. ANDERSON, J.

PAGE, Justice (dissenting).

I respectfully dissent. I disagree with the court's conclusion that the trial court here did not abuse its discretion when it rescinded its order granting Christian's self-representation motion. In reaching

---

**6.** Appellant also claims that the district court improperly rejected his severance motion, but this argument is similarly flawed: the motion was predicated on appellant representing himself. When the district court ended appellant's self-representation, his severance motion was left with no basis.

this conclusion, the court has answered the wrong question. The relevant question to be answered is whether, having granted Christian the right to represent himself, the trial court abused its discretion when it rescinded the order granting that right without finding that Christian had deliberately "engaged in serious and obstructionist misconduct." *See Faretta v. California*, 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); Minn. R.Crim. P. 5.02, subd. 2 (stating that the court may give advisory counsel full control over case if "(a) the defendant becomes so disruptive during the proceedings that such conduct is determined to constitute a waiver of the right of self representation or (b) the defendant requests advisory counsel to take over representation during the proceeding").

Recognizing that the Sixth Amendment to the United States Constitution guarantees criminal defendants the right to an attorney, the United States Supreme Court held in *Faretta* that: "The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. * * * The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Faretta*, 422 U.S. at 819–20, 95 S.Ct. 2525. When deciding whether to grant a self-representation request, trial courts are required to determine (1) whether the request is clear, unequivocal, and timely and (2) whether the defendant knowingly and intelligently waives his right to counsel. *Id.* at 835, 95 S.Ct. 2525. If the trial court so finds, the right to self-representation must be granted.

The court dismisses the trial court's initial order on the basis that Christian was granted pro se status because the trial court "mistakenly assumed that appellant had an 'absolute right to proceed pro se.'" Under *Faretta*, the defendant *does* have an absolute right to proceed pro se as long as the court determines that the defendant's request is knowing, voluntary, unequivocally asserted, and timely. From the record, there is no indication that the trial court did not consider and apply the *Faretta* factors in granting Christian the right to proceed pro se. Therefore, we cannot ignore the trial court's initial order. Once granted, irrespective of whether the trial court later reconsiders granting pro se status, *Faretta* clearly states that the right to proceed pro se cannot be revoked *unless* the defendant engages in serious obstructionist behavior.

Christian's trial, joined with those of his brother, David Christian, and Vernon Powers, commenced on May 14, 2001. On Friday, May 18, during the fourth day of jury selection, Christian asked the trial court for a continuance so that he could find a private attorney to represent him. Initially, the trial court indicated that it would not grant the continuance based on its conclusion that Christian's public defenders appeared to be providing competent representation. The trial court went on to tell Christian:

> [Y]ou do have the option of representing yourself, since you apparently brought that to the court's attention. If you are serious about that, you should very definitely discuss it with your present counsel; or, if it becomes necessary, I will ask that the Third District appoint counsel for you to have the same discussion that they had with Mr. Vernon Powers.[1]

1. While the trial court indicated that Christian "apparently brought [his right to proceed pro se] to the court's attention," it is not at all clear from the record that he did so. The record suggests that the trial court may have raised the issue in the first instance. Notwithstanding this lack of clarity when discuss-

After further discussion, the trial court asked Christian to state whether he wanted to represent himself. Christian responded that he was asking for a continuance to Monday, May 21, so that he could seek new counsel. Ultimately, the trial court granted Christian a continuance to May 21.

When trial reconvened on the 21st, Christian, having failed to find a private attorney to represent him, sought a further continuance. The trial court denied Christian's request and then considered whether Christian would be permitted to proceed pro se. The trial court warned Christian that if at any point the trial court determined that the purpose of Christian's request to proceed pro se was to delay or disrupt the trial or for the sole purpose of having his trial severed, the trial court would simply reappoint his trial counsel. The trial court then proceeded to question Christian extensively regarding his knowledge of the proceedings, the charges alleged against him, the defenses he would be able to raise, and the ramifications of his decision to proceed pro se.[2] Christian answered the trial court's questions, generally showing an understanding of the law and legal terms. When questioned if he was willing to risk proceeding pro se, Christian replied that he felt he had no choice under the circumstances. To ensure that Christian's decision was informed, the trial court ordered a 15–minute recess to give Christian time to consult with his counsel. Upon returning, Christian explicitly stated that he wanted to proceed pro se. At that time, the state responded by stating, "Your Honor, [the] State believes that the Court made the correct inquiries of Mr. Christian to determine whether he was making a knowing, voluntary, intelligent waiver of his right to counsel in this case to proceed pro se. * * * The State is satisfied with the inquiry of the Court." For the record, the trial court also noted that Christian had the opportunity to meet and confer with Joseph Bueltel, the Chief Public Defender for the Third District, in addition to his two appointed counsel before deciding to assert his right to proceed pro se. The trial court concluded that Christian knowingly and intelligently waived his right to counsel and permitted him to proceed pro se. In doing so, the trial court made clear to Christian that he would not be allowed to represent himself if he became disruptive or if he specifically elected to re-retain his court-appointed counsel. The trial court then discharged Christian's court-appointed counsel and immediately reappointed them as standby counsel.

Right after Christian was granted the right to proceed pro se, Mr. Voss, the attorney for David Christian, brought a motion to sever Christian's trial from the two represented defendants, citing Christian's lack of legal experience and the serious nature of the charges. The trial court denied Voss's motion, but indicated that the motion could be remade at any time during the trial if Christian's self-representation resulted in substantial prejudice to the other defendants. Mr. Voss then requested a three-day continuance so that Christian could have time to review materials on how to conduct voir dire. When questioned why Voss was arguing on Christian's behalf, Voss indicated that he was representing the interest of his client, David Christian, and was concerned about the effect a pro se defendant would have on his client. The request was denied.

During the course of these discussions, Christian submitted a number of written

ing this issue, I will, for ease of discussion, refer to Christian's self-representation motion.

**2.** These questions continued over nine pages of transcript.

motions. Those motions included a motion that trial and research materials be made available to him and that he have access to a telephone for purposes of his self-representation, that he have access to a law library, that he receive certain discovery, that he be permitted to retain an expert, and that his trial be severed from the other defendants. The trial court addressed each one of these motions in turn, granting some and denying others, including the severance motion. In discussing Christian's severance motion, the trial court specifically asked if Christian's request to proceed pro se was at all related to his request for severance. Christian responded equivocally, but noted that he did not want to prejudice his codefendants. The state did not respond at that time to Christian's statements and, ultimately denying the motion, the trial court treated Christian's motion for severance much like severance motions that had been made previously by Christian's codefendants. The trial court then addressed issues relating to a possible mistrial based on the trial court's refusal to allow Christian to begin the jury selection process anew, along with questions of how Christian would be able to examine witnesses and present evidence while in leg restraints.

After the trial court completed its review of Christian's motions, Voss renewed his request for a continuance until Thursday, May 24, 2001. The trial court agreed to continue the proceedings, but only until 1:30 the next afternoon. The trial court also requested that the parties be prepared to argue whether the trials should be severed and specifically requested that counsel examine whether reappointing counsel for Christian during the middle of trial would affect the trial's "fundamental fairness."

At the hearing the next afternoon, May 22, each of the defendants made motions to sever their trials on the basis that having a pro se defendant could potentially prejudice the trials of the two represented defendants. Voss addressed the trial court first, noting that, although there is no presumption in favor of severance in multi-defendant cases when one of the defendants proceeds pro se, he was requesting severance because he was concerned that Christian might engage in disruptive behavior that would negatively impact his client's right to a fair trial. In his argument, Voss specifically noted that he was not concerned that Christian had been granted the right to proceed pro se. The state then proceeded to argue not whether the trials should have been severed, but rather whether Christian's request to proceed pro se should have been granted at all. After hearing the arguments for both represented defendants, the following colloquy took place:

THE COURT: Mr. Scot Christian.

CHRISTIAN: I would just like in response to Mr. Orput's letter, that I just received a few minutes ago, that I am playing games, I brought to the Court's attention a while back about my dissatisfaction about my counsel, which at this time brought me to the decision, given my ultimatum, as I look at as either go pro se or continue with my previous counsel is a decision I have. I decided to go pro se.

THE COURT: Mr. Christian, we are talking about the issue of severance right now. Please confine yourself to that issue.

CHRISTIAN: And I just ask that my motion for severance was based on not prejudicing the other defendants. Anything I do in the court should reflect on me. And if I was severed out that's what could happen. And that was my purpose for the motion to give these gentleman a fair trial and myself, too.

THE COURT: One question, Mr. Christian. Presuming that the Court severed the other two defendants, you would be the first one to go forward and we would proceed this afternoon. Are you ready to do so?

CHRISTIAN: If I have to, I have to.

THE COURT: Are you ready to do so? Are you ready to question jurors? Are you ready to make an opening statement? Are you prepared to defend yourself knowing that there will be no other attorneys representing your interests?

CHRISTIAN: No, I'm not.

THE COURT: Or any combined interest?

CHRISTIAN: No, I am not.[3]

THE COURT: Very well, The Court will make an additional record at this point in time. First of all, do you have anything else that you wish to say on this particular issue, Mr. Christian?

CHRISTIAN: On the severance issue?

THE COURT: Yes.

CHRISTIAN: I just asked to be severed out.

THE COURT: Mr. Rank or Mr. Orput?

MR. ORPUT: I would like to respond on behalf of the prosecution. We actually find ourselves in agreement with Mr. Voss and Mr. Swenson,[4] not necessarily the severance issue, but on the issue that I think precedes that and that's whether the defendant Scott Christian

can go pro se. I think that is what triggered the whole argument about severance. And we agree with both counsel. They made their point—both attorneys—quite eloquently for the State and, in fact, I did hand the Court, as Mr. Swenson was speaking, the Walker case. And we would ask the Court right now preliminary to reconsider the defendant's motion for pro se, as we have serious concerns about his ability, just like counsel do. We think, frankly—especially now that Mr. Voss advised Court that all it would take is for Scot Christian to act up in court he has pretty thoroughly advised of how he can get a mistrial. And that's a concern of ours, as well. We have already got a week invested into this case. It may take another week, it may take two. There are no guarantees that Scot Christian won't inadvertently or with intent cause a mistrial. That's why we would ask you at first to reconsider his motion for pro se status. I think he made it clear himself, he is not prepared.

After further arguments from counsel, the trial court decided to rescind the order permitting Christian to proceed pro se. In doing so, the trial court noted that Christian's dissatisfaction with his counsel over trial strategy might well have been the subject of an absolute right to proceed pro se had it been brought to the trial court's attention earlier, but that now it appeared that Christian's request was merely to delay the trial.[5] Specifically, the trial court

---

3. This response is not surprising given the complexity of the trial and the fact that Christian had less than 24 hours to prepare.

4. It is important to note that at this point Orput is mischaracterizing what Voss argued. It is quite clear from the record that Voss never stated or implied that Christian should not have been granted the right to proceed pro se. Rather, Voss argued that once Chris-

tian became a pro se defendant his trial needed to be severed from the other defendants.

5. Christian first voiced his dissatisfaction with trial counsel on January 13, 2001, and so it is unclear to me how the trial court could find that Christian's assertion of his right of self-representation was for the purposes of delay.

cited the following facts to support its decision: (1) Christian's "[y]es and no" statement admitting to some connection between his self-representation request and his severance motions; (2) his statement that he was not ready to begin trial proceedings immediately; (3) the late date of Christian's motion; (4) Christian's escape from jail; and (5) the written motions Christian had filed seeking a continuance and severance and/or mistrial, which the trial court found were "substantial evidence of the intent" to request self-representation for the purposes of delay.

None of these facts support a finding that Christian was engaged in "serious and obstructionist misconduct," as required by *Faretta*, to justify the rescission of his right to proceed pro se. *See* 422 U.S. at 834 n. 46, 95 S.Ct. 2525. At the outset, it must be noted that Christian's motivation for seeking self-representation is not an appropriate basis upon which to revoke his request to represent himself, since the right to defend oneself is a personal right that is not to be questioned by the court if the court determines that the request is timely, not for the purpose of delay, and knowingly and intelligently asserted. *See id.* at 834, 95 S.Ct. 2525 (noting that because it is the defendant and not his attorneys or the state who will bear the consequence of a conviction it is the defendant "who must be free personally to decide whether in his particular case counsel is to his advantage"). Clearly, before initially permitting Christian to represent himself, the trial court had to have reached the conclusion that Christian's request was timely, not made for the purpose of delay, and knowingly and voluntarily asserted. If, in fact, the trial court believed that Christian's motion was made for purposes of delay, his right to self-representation should have been denied in the first instance. Having granted the motion, to the extent it concluded based on Christian's written motions that Christian's purpose was to delay the proceeding, the remedy was to deny the motions, not revoke his right to self-representation.

Nor is the fact that Christian stated that he was not ready to proceed to trial a basis for revoking his right to self-representation. The right to self-representation includes the right to conduct one's defense to one's own detriment. *Id.; United States v. Flewitt*, 874 F.2d 669, 674 (9th Cir.1989) (reversing a trial court decision to revoke pro se status because the defendants refused to prepare for trial). The Court in *Faretta*, although recognizing that the state had a strong argument that the help of counsel is essential to assure a defendant a fair trial, dismissed this argument because it would permit the state to impermissibly impose counsel on an unwilling defendant. 422 U.S. at 832–33, 95 S.Ct. 2525. Rather than forcing counsel on a defendant, the Court made clear that a defendant's choice to represent himself must "be honored out of 'that respect for the individual which is the lifeblood of law.'" *Id.* at 834, 95 S.Ct. 2525 (citation omitted). As long as Christian was complying with relevant substantive and procedural rules and was not being disruptive, the trial court's revocation of his right to represent himself resulted in counsel being impermissibly forced on Christian. There is no indication from the record that Christian was not complying with relevant substantive and procedural rules. Being prepared is not a substantive or procedural requirement and there is no evidence to suggest that Christian was engaging in serious obstructionist behavior. In revoking Christian's ability to represent himself, the trial court did nothing more than force Christian to accept counsel against his will, an action prohibited by *Faretta*.

Similarly, the trial court's third and fourth reasons, the purported late date of

Christian's motion and Christian's escape from jail, were not appropriate reasons for revoking Christian's right of self-representation. With respect to the purported late date, that fact might be relevant if it was clear that it was Christian, and not the trial court, who during voir dire first raised the possibility of proceeding pro se and if the trial court had not already granted Christian the right to represent himself. Obviously, the date of Christian's motion was a known and presumably considered fact when the trial court initially allowed Christian to proceed pro se. If the trial court believed that the request to proceed pro se was untimely, the trial court would not have raised the possibility of proceeding pro se, nor would it have granted Christian the right to do so. Like the purported late date, Christian's escape from jail was also known and presumably considered before he was granted the right to self-representation.

Finally, the trial court relies on Christian's motions for a continuance, severance, and/or a mistrial as evidence that his motion to proceed pro se was a sham. However, those motions were nothing more than Christian's attempt to represent himself within the relevant substantive and procedural rules. As noted above, in bringing these motions he was neither disruptive nor disrespectful to the trial court. Thus, his right to self-representation should not have been revoked simply because he sought to represent himself. These motions were just three of a number of substantive motions that Christian presented to the trial court. Indeed, the underlying substance of his severance motion was no different than the motions submitted by his codefendants' counsel. Christian argued all of the motions and the trial court granted some and denied others, including the motions for severance and/or

mistrial and for a continuance. The trial court considered these motions as legitimate at the time they were submitted and did not warn Christian that he was doing anything improper or incorrect. The fact that the trial court did consider all of these motions suggests that the trial court's subsequent reliance on submission of the continuance, severance, and mistrial motions as a basis for revoking Christian's right to self-representation was pretextual.

From the record, it appears that what the trial court was really concerned about was, in the context of joined trials, the possibility that Christian's self-representation might affect the other defendants' right to a fair trial. Presumably, one concern was that Christian would do something to disrupt the trial, either intentionally or unintentionally, at some later point. However, as the Court clearly stated in *Faretta*, the possibility that a criminal defendant representing himself might use the courtroom to deliberately disrupt their trial does not justify the preemptive denial of the right to self-representation. The appropriate remedy for the "possibility" that Christian might engage in disruptive behavior is the termination of the defendant's self-representation only once such behavior has occurred. *Faretta*, 422 U.S. at 834 n. 46, 95 S.Ct. 2525. If we permit courts to disallow self-representation in joined criminal trials merely on the possibility that the pro se defendant will engage in disruptive behavior, the defendant's inherent right to self-representation will be lost in the name of efficiency. A defendant's right to self-representation should not fall waste to the desire to maintain joined trials. If the trial court was so concerned about Christian's possible behavior, the trials could have been severed. By revoking Christian's right to represent himself solely on the possibility

that he would be disruptive,[6] this trial court did exactly what the Court in *Faretta* explicitly stated a court should not do. At the time the trial court granted Christian the right of self-representation, the state, his codefendants, and the trial court understood that Christian had knowingly and voluntarily waived his right to counsel, that it was timely, and not for the purposes of delay. It was only when subsequently faced with the complicated problem of whether having one pro se defendant required severance of the three joined trials that the trial court revoked the right. Taking the easy way out by revoking Christian's right to represent himself was an impermissible solution to this problem. On these facts, the trial court, having once granted Christian the right to represent himself, abused its discretion when it subsequently revoked that right.

Therefore, I dissent.

BLATZ, Chief Justice (dissenting).

I join in the dissent of Justice Page.

ANDERSON, Paul H., Justice (dissenting).

I join in the dissent of Justice Page.

---

**6.** It should not go unstated that, to the extent the trial court's reason for revoking Christian's self-representation was that Christian, representing himself pro se, might intentionally act out in ways that would compromise the other defendants' rights, the potential for that conduct existed whether Christian was represented by counsel or proceeded pro se.