STATE OF MINNESOTA

IN SUPREME COURT

A24-1026

Mower County                                                              McKeig, J.

State of Minnesota,

             Respondent,

vs.                                                            Filed:  March 25, 2026
                                                               Office of Appellate Courts
Scot Perry Christian,

             Appellant.

_____

Keith Ellison, Attorney General, Keaon Dousti, Assistant Attorney General, Ed
Stockmeyer, Assistant Attorney General, Saint Paul, Minnesota; and

Kristen Nelsen, Mower County Attorney, Austin, Minnesota, for respondent.

Scot Perry Christian, Oak Park Heights, Minnesota, pro se.

_____

S Y L L A B U S

The district court did not abuse its discretion when it denied the preliminary

application for relief from a first-degree felony murder conviction under the Act of May

19, 2023, ch. 52, art. 4, § 24, 2023 Minn. Laws 810, 864–68, because an eyewitness

testified at trial that appellant told his accomplice to shoot and, on appeal, appellant

concedes that he told his accomplice to shoot the victims.

1

Affirmed.

Considered and decided by the court without oral argument.

O P I N I O N

McKEIG, Justice.

The issue in this appeal is whether the district court abused its discretion by denying appellant Scot Perry Christian's preliminary application for relief from two first-degree felony murder convictions under legislation enacted during the 2023 session providing a path to possible relief for individuals convicted of intentional felony murder under an aiding-and-abetting theory of liability. Act of May 19, 2023, ch. 52, art. 4, § 24, 2023 Minn. Laws 810, 864–68 (the Act). We conclude that Christian's allegations in his preliminary application were insufficient to prove there is a reasonable probability that Christian is entitled to relief under the Act because the facts established at trial—and conceded to by Christian on appeal—show that he acted as an accomplice with the intent to cause another's death. Accordingly, we hold that the district court did not abuse its discretion by denying Christian's preliminary application based on a determination that there is not a reasonable probability that he is entitled to relief under the Act. We therefore affirm the district court's denial of Christian's preliminary application.

**FACTS**

In 2000, a Mower County grand jury indicted Christian for several offenses. These offenses included two counts of first-degree premeditated murder and two counts of first-degree felony murder while committing or attempting to commit aggravated armed robbery, in connection with the shooting deaths of Juan Ramirez and Raul Gutierrez in

2

Austin, Minnesota on June 30, 2000. The indictment alleged both principal and aiding-and-abetting theories of criminal liability.

*Trial*

The State presented witnesses who testified that Christian, his codefendant Vernon Powers, and two others planned and executed an armed robbery in a motel. Christian and Powers entered the motel room armed with guns. There were several people in the room. Eyewitnesses testified that Christian and Powers pointed their guns and asked for money and, at one point, Christian held a gun to a man's head. They testified that one of the targeted men yelled for the police and Christian instructed Powers to shoot him, at which point both Christian and Powers fired multiple shots. Two of the targeted men, Ramirez and Gutierrez, died from gunshot wounds. A third victim was injured and survived.

In addition to presenting eyewitnesses, the State also produced physical evidence. The results of a gunshot residue test on Christian's hand indicated he had either "discharged a firearm, handled a discharged firearm, or was in close proximity to a discharged firearm." The State also produced two guns—a Ruger pistol and a revolver—that had been turned over to police. Examiners matched bullets recovered from the bodies of the two men to the specific Ruger pistol and to a revolver matching the class characteristics of the other gun.

In closing arguments, the State argued that Christian was guilty of murder under both principal and aiding-and-abetting theories of liability. The district court instructed the jury on the elements of premeditated and felony first-degree murder and on aiding-and-abetting liability. The jury found Christian guilty on all counts, including both counts of

3

first-degree premeditated murder and both counts of first-degree felony murder. The verdict forms for the murder counts did not specify whether Christian was guilty based on a principal or an aiding-and-abetting theory of liability.[1] The district court accepted and recorded the guilty verdicts, entered judgments of conviction for the two counts of first-degree felony murder, and imposed consecutive sentences of life with the possibility of release for each first-degree felony murder conviction.[2]

***Postconviction Appeal***

Christian appealed, asserting a violation of his right to self-representation, improper denial of his motion to sever his trial, prosecutorial misconduct, and ineffective assistance of counsel. *State v. Christian*, 657 N.W.2d 186, 190 (Minn. 2003). We affirmed his convictions.[3] *Id.* at 188.

---

[1]  The first-degree premeditated murder verdict forms contained the phrase "in violation of Minnesota Statute Sections 609.185(1); 609.05; 609.11, subd. 5." These statutes set forth principal liability, Minn. Stat. § 609.185(1) (1998); aiding-and-abetting liability, Minn. Stat. § 609.05; and a mandatory sentencing provision, Minn. Stat. § 609.11. The first-degree felony murder verdict forms contained the phrase "in violation of Minnesota Statute Sections 609.185(3); 609.05; 609.11, subd. 5; 609.245, subd. 1." These statutes set forth principal liability, Minn. Stat. § 609.185(1) (1998); aiding-and-abetting liability, Minn. Stat. § 609.05; a mandatory sentencing provision, Minn. Stat. § 609.11, subd. 5; and principal liability for aggravated robbery, Minn. Stat. § 609.245, subd. 1.

[2]  For a crime committed on June 30, 2000, first-degree premeditated and felony murder carried identical punishments: a mandatory sentence of life with the possibility of release after 30 years. Minn. Stat. § 609.185(a) (1998); Minn. Stat. § 244.05, subd. 4 (1998). The court did not explain its sentencing choice. Christian was also convicted of assault, Minn. Stat. § 609.221, subd. 1 (1998), and the court sentenced him to a consecutive 86-month term for that conviction.

[3]  We preserved Christian's right to pursue an ineffective-assistance-of-counsel claim, but Christian never filed any petitions for postconviction relief on these grounds. *Christian*, 657 N.W.2d at 194.

*Passage of the Act*

Christian's trial took place before the Legislature amended Minnesota's felony murder laws. Until 2023, Minnesota's expansive liability statute, Minn. Stat. § 609.05 (2022), allowed a defendant to be found guilty of first-degree felony murder without intent to cause the death of another person, Minn. Stat. § 609.185(a)(3).

In 2023, the Legislature amended the felony murder statutes in two ways. First, it added an exception to the expansive liability rule for intentional felony murder convictions such that a person can be convicted of first-degree felony murder "for a death caused by another" only if "the person intentionally aided, advised, hired, counseled, or conspired with or otherwise procured the other with the intent to cause the death of a human being." Act of May 19, 2023, ch. 52, art. 4, § 3, 2023 Minn. Laws 810, 850 (codified at Minn. Stat. § 609.05, subd. 2a(a)).

Second, and relevant here, the Legislature enacted legislation creating a path for individuals convicted of first-degree intentional felony murder, Minn. Stat. § 609.185(a)(3), or second-degree intentional felony murder, Minn. Stat. § 609.19, subd. 2(1), under an aiding-and-abetting theory of liability to apply for limited relief. *See* the Act, subd. 3(a)(1)–(2). In the first step, the applicant must submit a preliminary application to the district court seeking permission to petition to vacate the felony murder conviction. *Id.*, subd. 4(a); *In re The Filing of Requests for Relief in Aid and Abet Felony Murder Cases*, No. ADM09-8010, Order at 3 (Minn. filed Aug. 18, 2023). This preliminary application must contain certain identifying and procedural information about the applicant

5

and the applicant's case and "a brief statement . . . explaining why the applicant is entitled to relief under this section." The Act, subd. 4(a).

The district court judge reviewing the preliminary application "shall determine whether, in the discretion of that judge, there is a reasonable probability that the application is entitled to relief." *Id.*, subd. 5(c). To meet this "reasonable probability" standard, an applicant seeking "relief from first-degree felony murder must allege facts that would cause a rational person to believe that at an evidentiary hearing, the applicant might be able to prove by a preponderance of the evidence that they neither caused nor intentionally aided . . . or otherwise procured another with the intent to cause the death of a human being." *State v. Zielinski*, __ N.W.3d __, __ (Minn. 2026). To determine whether the applicant meets the reasonable probability standard, the judge "shall consider the preliminary application and any materials submitted with the preliminary application and may consider relevant records in the possession of the judicial branch," the Act, subd. 5(d), but "cannot make credibility determinations," *Zielinski*, __ N.W.3d at __. The Act also indicates that the "court may summarily deny an application" and specifically enumerates those circumstances when summary denial is permissible. The Act, subd. 5(e)(1)–(4), (f); *Zielinski*, __ N.W.3d at __.

### Christian's Preliminary Application for Relief under the Act

In March 2024, Christian filed a preliminary application to vacate his felony murder convictions under the Act. Using a form application, Christian indicated that he was convicted of violating Minn. Stat. § 609.185(a)(3) (first-degree felony murder); that he "did not cause the death of a human being"; and that he "did not intentionally aid, advise, hire,

6

counsel, or conspire with or otherwise procure another with the intent to cause the death of a human being." Christian reiterated the same assertions in his "additional statement in support of relief." He presented no new facts or arguments in the application.

The district court denied the preliminary application in May 2024. In the corresponding memorandum, the district court reviewed the facts of the case as recounted above, the evidence presented, and the procedural history. The district court went on to determine "there is not a reasonable probability that [Christian] is entitled to relief" and denied Christian's application.

Christian appealed the denial of his preliminary application to us in June 2024. After first staying the appeal pending our final decision in *State v. Griffin*, 20 N.W.3d 57 (Minn. 2025) (*Griffin IV*) (order) (per curiam) (raising a jurisdictional issue), we lifted the stay and accepted Christian's appeal.

## ANALYSIS

There is one issue before us: whether the district court abused its discretion by denying Christian's preliminary application based on a finding that "there is not a reasonable probability that [Christian] is entitled to relief" under the Act. We review the denial of a preliminary application under the Act for abuse of discretion. *State v. Griffin*, 24 N.W.3d 247, 254 (Minn. 2025) (*Griffin V*). A district court abuses its discretion when it bases its decision "on an erroneous view of the law or is against logic and the facts in the

record." *Id.* at 255 (citation omitted) (internal quotation marks omitted). We review a district court's legal conclusions de novo. *Id.*

Once a district court receives an applicant's preliminary application, "the reviewing judge shall determine whether, in the discretion of that judge, there is a reasonable probability that the applica[nt] is entitled to relief under [the Act]."[4] The Act, subd. 5(c). In order to make this determination, "the reviewing judge shall consider the preliminary application and any materials submitted with the preliminary application and may consider relevant records in the possession of the judicial branch." *Id.*, subd. 5(d). If the reviewing court concludes that the applicant has no reasonable probability of entitlement to relief, then the court sends notice to the applicant denying the application. *Id.*, subd. 5(h); *c.f. Griffin V*, 24 N.W.3d at 252 (describing a district court's denial of a preliminary application under the Act, subd. 5(h)). A district court "cannot make credibility determinations" when deciding whether an applicant has satisfied the "reasonable probability" standard at the preliminary application stage. *Zielinski*, __ N.W.3d at __. But the court need not accept an applicant's mere allegations of entitlement to relief where the applicant "presents no new arguments or evidence in [the] application to support [their] claim" and the "facts

---

[4] We note that subdivision 5(c) of the Act uses the word "application," whereas subdivisions 5(f)–(h) and 6(e)(2) use the word "applicant." *Compare* the Act, subd. 5(c) ("shall determine whether, in the discretion of that judge, there is a reasonable probability that the application is entitled to relief."), *with* the Act, subds. 5(f)–(h) ("reasonable probability that the applicant is entitled to relief"). For the purposes of our analysis in this case, this distinction is immaterial.

established at trial" and confirmed on appeal show that the applicant caused or intended to cause another's death. *Griffin V*, 24 N.W.3d at 256, 255.

Here, Christian himself has effectively conceded that he is not entitled to relief on appeal. *See State v. Boldman*, 813 N.W.2d 102, 106 (Minn. 2012) (stating that "the court will accept a concession . . . when the concession is reasonably supported by the record"); *see also State v. Thomas*, 891 N.W.2d 612, 620 n.9 (Minn. 2017) (recognizing the criminal defendant's concession on appeal). The district court, in denying Christian's preliminary application, relied in part on the fact that Christian directed Powers to shoot. Christian acknowledges and does not dispute this fact. Christian concedes in his appellate brief that an eyewitness testified that Christian "told Vernon Powers to shoot his uncles" and that Christian told Powers to shoot. That concession is reasonably supported by the trial record—an eyewitness testified that Christian told Powers, "Shoot him, shoot him."[5] Christian does not argue that the "shoot him" part of the testimony was inaccurate; instead, he asserts that it shows that Christian himself did not have a gun. But Christian telling his codefendant to "shoot him" is, on its own, sufficient evidence of Christian's intent to aid,

---

[5] On appeal, Christian made the concession that he told Powers to shoot to show that Christian himself did not have a gun. But whether Christian had a gun is not dispositive of Christian's intent that his accomplice kill the victims.

advise, counsel, conspire with, or procure another with the intent to cause the death of a human being.[6]

This case is analogous to *Griffin V.* Like Christian, Griffin asserted in his preliminary application that he did not kill anyone or willingly participate in causing the death of another. *Griffin V*, 24 N.W.3d at 252. Griffin also argued that the State did not prove who the actual shooter was and attempted to poke holes in witnesses' testimony. *Id.* We were unconvinced, concluding that "[t]he facts established at trial" and our "prior holding that the trial evidence supported a reasonable inference that Griffin shot [the victim] with an intent to kill him support[ed] the district court's rejection of Griffin's apparent claim that he did not cause the death of a human being." *Id.* at 255–56 (citation omitted) (internal quotation marks omitted). Therefore, we concluded in *Griffin V* that the district court properly did not accept as true Griffin's allegations that he did not kill anyone and properly assessed his allegations in light of the record.

As in *Griffin V*, the trial record here demonstrates that Christian intentionally aided and advised another with intent to cause the death of a human being and on appeal, Christian has conceded that he told his codefendant to shoot. The trial record—as confirmed by Christian himself on appeal—supports the district court's rejection of Christian's claim under the Act.

\* \* \*

---

[6] Based on this concession by Christian before our court as to his intent to cause the death of a human being under an aiding and abetting theory, we have no need to further examine the district court's analysis.

10

Christian presented no new evidence or arguments in his preliminary application to support the allegations in the application that he neither caused nor intentionally aided, advised, hired, counseled, or conspired with or otherwise procured another with the intent to cause the death of a human being, and these claims directly conflict with the facts established at trial and conceded by Christian himself on appeal. Thus, the district court's determination that "there is not a reasonable probability that [Christian] is entitled to relief" was consistent with the law and the facts in the record. The district court therefore did not abuse its discretion by denying Christian's preliminary application.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the district court.

Affirmed.