# IN THE COURT OF APPEALS OF IOWA

No. 15-0569
Filed June 15, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**BRETT ANTHONY FORD,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Calhoun County, James A. McGlynn, Judge.


        Brett Ford appeals his domestic abuse assault conviction and sentence. **JUDGMENT AFFIRMED; SENCENCE VACATED IN PART AND REMANDED WITH DIRECTIONS.**


        Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.


        Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

A jury found Brett Ford guilty of domestic abuse assault based on evidence that he struck his wife's knee with a metal object, hit and dragged her, doused her with freezing liquids, and threatened her life. *See* Iowa Code §§ 708.1, .2A(4) (2013). The jury found him not guilty of false imprisonment.

On appeal, Ford argues the district court (1) abused its discretion in admitting evidence of his prior acts of violence against his wife, (2) abused its discretion in failing to inquire into a conflict of interest with his attorney, and (3) erred in taxing all prosecution costs to him when he was acquitted of one of the charges.

## I.    *Prior Acts of Violence*

After the State filed a trial information, Ford filed a notice that he would rely on the defense of self-defense. The jury was instructed on this defense and the State's obligation to disprove justification.

Ford also filed a motion in limine seeking to exclude prior "bad acts" evidence. The district court reserved ruling until trial and subsequently allowed the prosecutor to question Ford's wife about prior acts of violence. She testified Ford assaulted her more than once and described an assault that took place approximately one year before the charged event. In the same vein, Ford's mother acknowledged he may have previously assaulted his wife. She testified she saw her daughter-in-law's injuries and previously helped her leave the state.

Ford contends the evidence of prior bad acts was inadmissible. *See* Iowa R. Evid. 5.404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in

conformity therewith."). The State counters that the evidence was admissible to prove intent or, alternatively, other aspects of the crime. *See id.* (stating such evidence may "be admissible for other purposes, such as proof of . . . intent").

"[W]hether evidence of prior crimes should be admitted is a judgment call on the part of the trial court." *State v. Rodriquez*, 636 N.W.2d 234, 240 (Iowa 2001). Our review is for an abuse of discretion. *Id.*

"In determining whether to admit prior-bad-acts evidence, we rely on a three-step analysis." *State v. Putman*, 848 N.W.2d 1, 8 (Iowa 2014). "A court must first determine whether the evidence is relevant to a legitimate, disputed factual issue." *Id.* at 9. "There also 'must be clear proof the individual against whom the evidence is offered committed the bad act or crime.'" *Id.* (citation omitted). If these requirements are satisfied, "the court must determine whether the evidence's 'probative value is substantially outweighed by the danger of unfair prejudice to the defendant.'" *Id.* (citation omitted).

### A.    Relevancy

The Iowa Supreme Court recently addressed the relevancy of prior bad acts in domestic violence cases. *See State v. Richards*, ___ N.W.2d ___, ___, 2016 WL 2609526, at *10-11 (Iowa 2016). The State charged Richards with domestic abuse assault, and he argued he acted in self-defense. *Id.* at *3. The State sought to admit evidence of prior acts of violence against Richards, contending his decision to raise self-defense placed his intent at issue. *Id.* The district court admitted the evidence. *Id.*

On appeal, the question before the Iowa Supreme Court was whether the "assertion of self-defense eliminated any legitimate dispute about [Richard's]

intent." *Id.* The court concluded "[i]ntent remains a legitimate matter of dispute even when the defendant asserts self-defense." *Id.* at *10. Accordingly, the court found "the other acts evidence" the State sought to introduce "was relevant to a legitimate disputed issue." *Id.* at *11.

Ford's case is virtually indistinguishable. Like Richards, he relied on self-defense. At trial, Ford testified he "absolutely" did not strike, or attempt, or intend to hurt his wife. Because he placed his intent at issue, we conclude the prior-bad-acts evidence was relevant to a legitimate disputed issue.

### B.     Clear Proof

Clear proof should be treated as an independent prong in the prior-bad-acts analysis. *See Putman*, 848 N.W.2d at 8 n.2 (concluding that despite some confusion, "the better approach" was to treat the requirement as an independent prong). Clear proof "need not be established beyond a reasonable doubt, and corroboration is unnecessary." *Id.* at 9. "There simply needs to be sufficient proof to 'prevent the jury from engaging in speculation or drawing inferences based on mere suspicion.'" *Id.* (citations omitted).

This standard was satisfied. Ford's wife testified he "beat [her] near death because he had found out [she] had cheated on him." *See Richards*, 2016 WL 2609526, at *11 ("[The victim's] testimony constituted clear proof of the other alleged acts under the circumstances presented here."). She also testified her neighbors observed one of the assaults. While the testimony of Ford's mother was more equivocal, she admitted seeing the injuries from a prior assault. We conclude there was clear proof of prior assaults.

### C. Probative Value versus Prejudicial Effect

Several factors are considered in balancing the probative force of prior-bad-acts evidence against the danger of unfair prejudice.

> [T]he court should consider the need for the evidence in light of the issues and the other evidence available to the prosecution, whether there is clear proof the defendant committed the prior bad acts, the strength or weakness of the evidence on the relevant issue, and the degree to which the fact finder will be prompted to decide the case on an improper basis.

State v. Taylor, 689 N.W.2d 116, 124 (Iowa 2004).

Because Ford placed his intent at issue, the prior-bad-acts evidence was probative. On a related note, Ford and his wife proffered differing versions of events, increasing the State's need for the evidence. See id. at 129 (finding need for evidence where "the defendant's intent was 'hotly contested'").

The countervailing consideration was the prejudicial effect of this prior-bad-acts evidence. In Richards, the court acknowledged "juries would probably not like someone whom they conclude has repeatedly assaulted a significant other." 2016 WL 2609526, at *11. But the court pointed out that the district court "carefully circumscribed the scope of the other acts testimony and thereby limited its potential prejudicial impact." Id.

The district court did the same thing here. The court refused to give the State "blanket authority" to introduce prior-bad-acts evidence, limiting the evidence to relatively recent episodes in "this domestic relationship." The court also instructed the prosecutor to use a question and answer format instead of allowing Ford's wife to testify in a narrative fashion. While the court did not admonish the jury to limit its consideration of the evidence, the court well could

have concluded such an instruction would have highlighted rather than minimized the general discussion of prior bad acts.

Ford concedes the prior-bad-acts evidence was nonspecific but argues this was a ground for excluding the testimony under the clear proof prong of the test. In our view, the State's refusal to dwell on the potentially inflammatory details of the prior bad acts rendered the evidence less likely to arouse the jury to "overmastering hostility." *See State v. Reyes*, 744 N.W.2d 95, 100 (Iowa 2008) ("The evidence . . . was concise, direct, and noninflamatory, and of a nature similar to that in the underlying charge. The evidence was not of a nature that would have incited 'overmastering hostility' toward [defendant]."). Additionally, Ford testified on direct examination that he was previously convicted of domestic assault against his wife, minimizing the prejudicial effect of the State's evidence.

We conclude the prejudice of the prior-bad-acts evidence did not substantially outweigh its probative value. *See Richardson*, 2016 WL 2609526, at *4 n.1 (clarifying the proper balancing test for other-acts evidence). Accordingly, we discern no abuse of discretion in the district court's admission of the evidence.

## II. *Conflict of Interest*

Several days into trial and after the State rested, Ford made a pro se motion to continue trial. He asserted he had met with his attorney the day before and the attorney "was dishonest . . . in telling [him] that [he did not] have the right to proceed pro se."

The district court concluded, and informed Ford, that his attorney gave him accurate information about his right to represent himself. The court

explained this was a right that could be lost if not timely asserted and advised Ford, "Asserting that right on the third day of trial after the State has rested, after some of your case has already been presented, it's too late."  The court denied Ford's motion to continue after characterizing the motion as "simply a delay tactic."

Ford contends "the district court erred in failing to thoroughly inquire into the existence of a conflict of interest when it denied [his] request for replacement counsel based on [his] allegation of an ethical violation."  Preliminarily, we note that Ford's motion was actually a motion to continue trial rather than a motion for replacement counsel.  Additionally, Ford did not argue he had a conflict of interest with his attorney.  However, the State agrees a district court has a duty to inquire about a possible conflict of interest if the facts warrant, whether or not it is mentioned.  *See State v. Watson*, 620 N.W.2d 233, 238 (Iowa 2000) ("A trial court has the duty sua sponte to inquire into the propriety of defense counsel's representation when it 'knows or reasonably should know that a particular conflict exists.'" (citation omitted)).  Accordingly, we address the merits of whether Ford was entitled to a continuance based on a claimed conflict of interest with his attorney resulting from alleged misinformation about his right to represent himself.

"The court can . . . disqualify the defendant's preferred attorney if the circumstances present an actual conflict or a serious potential for conflict."  *State v. McKinley*, 860 N.W.2d 874, 880 (Iowa 2015).  An actual conflict is "a conflict of interest that adversely affects counsel's performance."  *Id.* at 881.  "A serious potential for conflict occurs when the record indicates an actual conflict is likely to

arise." *Id.* Our review of the court's ruling is for an abuse of discretion. *Pippins v. State*, 661 N.W.2d 544, 548 (Iowa 2003) ("Whether the facts show an actual conflict of interest or a serious potential for conflict is a matter for trial court discretion, and we find an abuse of that discretion only when a party claiming it shows 'the discretion was exercised on ground or for reasons clearly untenable or to an extent clearly unreasonable.'" (citation omitted)).

The district court did not abuse its discretion in denying Ford's motion. As noted, the motion was premised on Ford's belief that he obtained incorrect advice from his attorney concerning his ability to represent himself. As the district court determined and informed Ford, he did not.

Ford said he spoke to his attorney about self-representation after the second day of trial. At this juncture, a request to proceed pro se would have been untimely. *See State v. Wehr*, 852 N.W.2d 495, 501 (Iowa Ct. App. 2014) (stating request to proceed pro se made prior to the impaneling of the jury would be timely unless the request was made for purposes of delaying the proceedings); *see also United States v. Webster*, 84 F.3d 1056, 1063 n.3 (8th Cir. 1996) ("[I]t would have been within the district court's discretion to altogether refuse [defendant's] request to proceed pro se for the few hours that remained of his trial."); *United States v. Mayes*, 917 F.2d 457, 462 (10th Cir. 1990) (holding trial court did not abuse its discretion in denying midtrial request to take over for competent counsel); *United States v. Wesley*, 798 F.2d 1155, 1155-56 (8th Cir. 1986) (stating "the right to self-representation is unqualified only if demanded before trial. Once trial commences, that right is subject to the trial court's discretion which requires a balancing of the defendant's legitimate interests in

representing himself and the potential disruption and possible delay of proceedings already in progress" and concluding court's refusal of a midtrial request to proceed pro se based on disruption of the trial was not an abuse of discretion); *State v. Christian*, 657 N.W.2d 186, 193-94 (Minn. 2003) (concluding for purposes of the *Wesley* standard, trial began at the commencement of jury voir dire and further concluding district court did not abuse its discretion in denying a self-representation request made on the fourth day of jury selection); *Lambert v. State*, 864 So. 2d 17, 18 (Fla. Dist. Ct. App. 2003) (concluding denial of midtrial request to discharge attorney and proceed pro se was not an abuse of discretion under either a per se rule of untimeliness or a discretionary rule). Accordingly, the statement of Ford's attorney that Ford could not proceed pro se was an honest rather than a "dishonest" answer and generated no ethical concerns about the attorney's candor. Necessarily, then, the statement generated no conflict of interest between Ford and his attorney, either actual or potential.

Because the district court asked Ford about the alleged misadvice, determined the advice was correct, informed Ford he was not given misinformation, and concluded Ford's request was simply a delay tactic, we conclude the district court did not abuse its discretion in denying Ford's motion for continuance.

### III.   Costs

As noted, the jury acquitted Ford on the false imprisonment charge. Nonetheless, the district court taxed Ford with all "court costs related to this case." Ford contends "the district court entered an illegal sentence in taxing to

[him] all costs associated with his case, rather than limiting his liability to those costs associated with . . . the count on which he was convicted." We agree. *See State v. Petrie*, 478 N.W.2d 620, 622 (Iowa 1991) ("[O]nly such fees and costs attributable to the charge on which a criminal defendant is convicted should be recoverable under a restitution plan."); *State v. Foth*, No. 14-1250, 2016 WL 719044, at *7 (Iowa Ct. App. Feb. 24, 2016) ("[A] defendant cannot be taxed costs regarding a dismissed charge."). "Fees and costs not clearly associated with any single charge should be assessed proportionally against the defendant." *Petrie*, 478 N.W.2d at 622 ("Since the defendant was only convicted on one of three counts he should be required to pay only one-third of these costs."); *Foth*, 2016 WL 719044, at *7 ("As [defendant] was only convicted of one of two charges, the costs associated with his prosecution should be proportionate, that is he should be assessed one-half of the costs."). We vacate that portion of the sentencing order assessing costs of "the case" to Ford and remand for entry of a sentence assessing him with only those costs applicable to the domestic abuse assault count.

**JUDGMENT AFFIRMED; SENTENCE VACATED IN PART AND REMANDED WITH DIRECTIONS.**

Doyle, J., concurs in part and dissents in part; Mullins, J., concurs.

**DOYLE, Judge.** (concurring in part and dissenting in part)

I concur with the majority's opinion regarding the prior-bad-acts and conflicts-of-interest issues. I respectfully dissent from the majority's opinion regarding court costs.

Ford was convicted on count I, the domestic-abuse-assault charge, and acquitted on count II, the false-imprisonment charge. The sentencing court ordered Ford to "pay court costs related to this case as assessed by the Calhoun County Clerk of Court." Ford argues the court entered an illegal sentence when it required him to pay the court costs in the case without specifying he was only responsible for the costs associated with count I.[1] But Ford has made no showing that he was assessed court costs not associated with the charge for

---

[1] We have recently seen a raft of these court-costs-associated-with-dismissed-charges cases. *See, e.g.*, *State v. Weekley*, No. 15-1121, 2016 WL 3010552 at \*2 (Iowa Ct. App. May 25, 2016); *State v. Leatherberry*, No. 15-0985, 2016 WL 3003420, at \*2 (Iowa Ct. App. May 25, 2016); *State v. Black*, No. 14-0886, 2016 WL 3010497, at \*1-2 (Iowa Ct. App. May 25, 2016); *State v. Ball*, No. 15-1319, 2016 WL 1697071, at \*1 (Iowa Ct. App. Apr. 27, 2016); *State v. Foth*, No. 14-1250, 2016 WL 719044, at \*6-7 (Iowa Ct. App. Feb. 24, 2016); *State v. Banks*, No. 15-0092, 2016 WL 541395, at \*1 (Iowa Ct. App. Feb. 10, 2016); *State v. Jenkins*, No. 15-0589, 2015 WL 8367810, at \*6-7 (Iowa Ct. App. Dec. 9, 2015); *State v. Jordan*, No. 14-2117, 2015 WL 8310689, at \*2 (Iowa Ct. App. Dec. 9, 2015); *State v. Davenport*, No. 14-1735, 2015 WL 7075704, at \*4-5 Iowa Ct. App. Nov. 12, 2015); *State v. Weaver*, No. 15-0040, 2015 WL 6509024, at \*2 (Iowa Ct. App. Oct. 28, 2015); *State v. Hupp*, No. 15-0012, 2015 WL 5311361, at \*2 (Iowa Ct. App. Sept. 10, 2015): *State v. Lam*, No. 14-1582, 2015 WL 4935707, at \*4 (Iowa Ct. App. Aug. 19, 2015); *State v. Abbasi*, No. 14-1576, 2015 WL 4935705, at \*2 (Iowa Ct. App. Aug. 19, 2015); *State v. Newell*, No. 14-1186, 2015 WL 4468856, at \*3 (Iowa Ct. App. July 22, 2015); *State v. Randall*, No. 14-1220, 2015 WL 4158940, at \*2 (Iowa Ct. App. July 9, 2015); *State v. Jenkins-Wells*, 14-0432, 2015 WL 3623642, at \*1-2 (Iowa Ct. App. June 10, 2015); *State v. Hamilton*, No. 14-1426, 2015 WL 2393687, at \*2 (Iowa Ct. App. May 20, 2015); *State v. Busch*, No. 14-1662, 2015 WL 1331878, at \*1 (Iowa Ct. App. Mar. 25, 2015); *State v. Hayes*, No. 14-0697, 2015 WL 1055383, at \*2 (Iowa Ct. App. Mar. 11, 2015); *State v. Bunce*, No. 14-0645, 2015 WL 799873, at \*1 (Iowa Ct. App. Feb. 25, 2015); *State v. Stewart*, No. 13-1113, 2014 WL 3511822, at \*4 (Iowa Ct. App. July 16, 2014), *aff'd*, 858 N.W.2d 17, 19 (Iowa 2015) ("We allow the decision of the court of appeals to stand with respect to the cost issue."); *State v. Goad*, No. 13-1319, 2014 WL 2885036, at \*2 (Iowa Ct. App. June 25, 2014). Many of these cases resulted in remands for corrected sentencing orders, creating much additional work for district courts.

which he was convicted. He merely makes the assumption he was over-assessed because the court taxed him with all costs *related to this case*. On the record before us, I am not willing to accept such an assumption.

"Criminal restitution is a creature of statute." *State v. Watson*, 795 N.W.2d 94, 95 (Iowa Ct. App. 2011). A defendant is responsible for court costs associated with the particular charge to which he pleads or is found guilty. Iowa Code § 910.2 (2013). Additionally, Iowa Code section 910.1(4) identifies court costs as a form of restitution. However, restitution, as defined in section 910.1(4), only applies to "criminal cases in which there is a plea of guilty, verdict of guilty, or special verdict upon which a judgment of conviction is rendered." *Id.* § 910.2(1). Similarly, section 815.13 authorizes the collection of costs of a criminal prosecution from a defendant "unless the defendant is found not guilty or the action is dismissed." In construing these statutes, our supreme court has made it clear "that only such fees and costs attributable to the charge on which a criminal defendant is convicted should be recoverable." *State v. Petrie*, 478 N.W.2d 620, 622 (Iowa 1991).

The clerk of court assesses court costs. In the absence of convincing proof to the contrary, it must be presumed that the clerk of court complied with applicable statutory and supreme court mandates regarding the assessment of costs, properly assessed costs against Ford, and did not charge him with any costs clearly associated with the dismissed charge. *See First Trust Joint-Stock Land Bank of Chicago v. Jansen*, 251 N.W. 711, 714 (Iowa 1933) ("[I]t must be presumed that the clerk of court in the county in which the petition was filed performed his statutory duty, and, in the absence of convincing proof to the

contrary, we must presume that the clerk properly indexed the plaintiff's petition."). The record before us does not demonstrate that any of the taxed court costs are clearly attributable to the dismissed charge. Until such a showing is made, I agree with the State that Ford's sentence is not illegal. *See Jenkins*, 2015 WL 8367810, at *6-7; *Davenport*, 2015 WL 7075704, at *4-5.

In any event, the amount of the filing and docketing fee would have been the same even if the State had not charged Ford with the second count. Those costs are clearly associated with count I. The same is true for the court-reporter fees assessed. Those fees would have been the same even if Ford had not been charged with count II. Those costs are clearly associated with count I. Without a showing to the contrary, the fact that a charge is dismissed, or that a defendant is acquitted of a charge, does not automatically establish that some of court costs in the case are not attributable to the charge or charges for which the defendant pled guilty or was found guilty.

Ford has not established he was over-assessed with court costs. Therefore, I see no need for a remand to reword the sentencing order. I would affirm Ford's sentence as it stands.

Furthermore, insofar as the majority opinion may implicate or suggest some apportionment of costs on remand, I disagree. *Petrie* delineates three categories of costs in multiple-count cases where a defendant has been acquitted of charges or where charges have been dismissed: (1) those clearly attributable to the charges on which the defendant is convicted, (2) those clearly attributable to dismissed charges, and (3) those not clearly associated with any

single charge.  *Petrie*, 478 N.W.2d at 622.[2]  Ford has made no showing that any of the taxed court costs are not clearly attributable to any single charge or attributed solely to the false-imprisonment charge.  Therefore, an apportionment of costs is not warranted.

---

[2] I believe our court has misconstrued *Petrie*.  In *Foth*, 2016 WL 719044, at *7, we held: "As [defendant] was only convicted of one of two charges, the costs associated with his prosecution should be proportionate, that is he should be assessed one-half of the costs."  To the extent that the *Foth* decision suggests Foth should have been assessed one-half of the *total* court costs, I believe the decision is wrong.  My application of the *Petrie* holding would have been to assess Foth all the costs clearly attributable to the charge on which he was convicted plus one-half of the costs not clearly associated with any single charge.